# Order

**Michigan Supreme Court**
**Lansing, Michigan**

August 28, 2008

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

137136 & (66)(67)

CITIZENS PROTECTING MICHIGAN'S
CONSTITUTION, LOWELL R. ULRICH,
MICHAEL BISHOP, ALAN L. CROPSEY,
VIRGIL SMITH, JR., and MIKE BRYANTON,
   Plaintiffs-Appellees,

v

              SC: 137136
              COA: 286734

SECRETARY OF STATE and
BOARD OF STATE CANVASSERS,
   Defendants-Appellees,

and

REFORM MICHIGAN GOVERNMENT
NOW!,
   Intervening
   Defendant-Appellant.
_____/

   On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal the August 13, 2008 order and the August 20, 2008 judgment of the Court of Appeals is considered. We direct that oral argument be heard on the application on Wednesday, September 3, 2008 at 9:30 a.m. MCR 7.302(G)(1). The motion for recusal is addressed in the joint statement of Justice Young and Justice Markman set forth below.

   CAVANAGH, J., states as follows:

   Preliminarily, I note that under MCR 2.003(A) a judge *may*, sua sponte, raise issues regarding his qualification to hear a case. Taking that opportunity, I note that my participation in this case would be prohibited under MCR 2.003(B)(5) because I have a "more than de minimis interest" in its outcome. However, I will participate because the rule of necessity applies to this unique case, and that rule provides an exception to the

disqualification grounds based on due-process concerns and encompassed in MCR 2.003. *See United States v Will,* 449 US 200 (1980).

Secondarily, I do not opine on the disqualification or qualification of any other justice. This is because this Court's traditional disqualification procedure leaves such a determination solely to the challenged justice. I continue to find this procedure wanting on due-process grounds, and I have offered an alternative to the unworkable status quo.[1] This case is yet another example showing the need to revise our current procedure, whether it be the adoption of my proposal in *Adair* or some other proposal. Nonetheless, bound by our current procedure, I remain mute on the propriety of my fellow justices' participation in this case.

WEAVER, J., states as follows:

Even though I have "more than de minimis interest"[2] in the outcome of this case, I decline to recuse myself because the common-law rule of necessity doctrine applies in this unique case.

All Michigan judges, active and retired, who under Const 1963, art 6, § 23, are normally eligible for assignment to cases in which a disqualification issue arises, would also be disqualified in this unique case because the outcome of the case affects their "more than de minimis interest[s]" as well. Under these unique circumstances, the common law-rule of necessity requires that I sit on the case because of the duty to provide a forum in which the case may be heard. *United States v Will,* 449 US 200 (1980).

Statement by KELLY, J., to follow.

YOUNG and MARKMAN, JJ., state as follows:

After having carefully considered the Reform Michigan Government Now! (RMGN) motion to disqualify us, we deny this motion and conclude that we are required to participate for the following reasons:

(1) It is claimed that each of us has a disqualifying interest. Under ordinary circumstances, we would certainly not participate in this case because we do have a direct and disqualifying interest in its outcome. If the proposed initiative is adopted this year, our terms of office will be prematurely ended on December 20 of this year. Such an interest squarely falls within MCR 2.003(B)(5), which provides in part that a judge is disqualified when he or she "has an economic interest in the subject matter in controversy

---

[1] *Adair v Michigan,* 474 Mich 1027, 1043-1044 (2006) (statement by Cavanagh, J.).

[2] MCR 2.003(B)(5).

. . . or has any other more than de minimis interest that could be substantially affected by the proceedings."[3]

(2) RMGN has not asserted, nor do we believe there is any basis for a claim, that we harbor any "actual bias" for or against any party. *Cain v Dep't of Corrections*, 451 Mich 470 (1996). Judges in Michigan are granted "every presumption of fairness and integrity, and heavy indeed is the burden assumed in this Court by the litigant who would impeach the presumption so amply justified through the years." *Mahlen Land Corp v Kurtz*, 355 Mich 340, 351 (1959).

(3) Although the motion to disqualify is directed only at us, the proposed initiative adversely affects the financial interests of *all* judges in this state because, among other things, it would reduce the salary of every judge by 15 percent and decrease his or her retirement benefits. Consequently, each of our colleagues on this Court has an independent ethical obligation to determine whether he or she can participate. See Code of Judicial Conduct, Canon 3(C); MCR 2.003(A).

Thus, the dispositive question in this case is not merely the propriety of our *own* participation, but whether any justice of this Court can participate. For if they are all also precluded from participation by MCR 2.003, there would be no quorum of this Court able to decide this matter. Under such circumstances, pursuant to the "Rule of Necessity," every justice would have a legal obligation to participate in order that judicial review is not precluded altogether.[4]

(4) The "Rule of Necessity" is the ancient common-law principle that

"although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet *he not only may but must do so* if the case cannot be heard otherwise." [*United States v*

---

[3] Although a justice of this Court is not bound by the *procedural* standards set forth in MCR 2.003, *Fieger v Cox*, 480 Mich 874, 875 (2007), the *substantive* standards in this provision are applicable. See *Adair v Michigan*, 474 Mich 1027, 1032-1038 (2006) (statement by Taylor, C.J., and Markman, J.). See *id.* at 1051, 1053 (concurrence of Corrigan and Young, JJ.).

[4] If a quorum of the Michigan Supreme Court cannot be formed to consider a matter, it has no authority to act. See *Jagger v Coon*, 5 Mich 31 (1858) (there is no authority for the Supreme Court to render judgment when there is no quorum). See also MCL 600.211(3) (a majority of justices shall constitute a quorum for transacting business).

*Will*, 449 US 200, 213 (1980), quoting F Pollack, A First Book of Jurisprudence 270 (6th ed 1929).][5]

In *Evans v Gore*, 253 US 245, 247-248 (1920), the United States Supreme Court held that the members of that Court could not decline to decide whether the compensation of federal judges was subject to the power to tax because there was no other appellate tribunal to which the plaintiff judge could go. In *Will, supra* at 215-216, a case involving compensation for all federal judges, the Court similarly held that, where all members of the Court would ordinarily have been required to recuse themselves for having a direct interest in the case, none of the members was disqualified because otherwise the case could not have been heard at all. The Court recognized that "[t]he Rule of Necessity has been consistently applied in this country in both state and federal courts." *Id.* at 214. See, e.g., *Bliss v Caille Bros*, 149 Mich 601 (1907).

(5) Among the universe of potential cases or controversies coming before this or any other supreme court, it cannot be that only those pertaining to judges and the judiciary alone are immune from judicial review. The present dispute concerns whether the proposed initiative has complied with the procedures of the Michigan Constitution. As with any other proposed changes in the constitution, such compliance is required and is subject to judicial review. The "'overarching right of the people' is to have the constitution that they have ratified given respect and accorded its proper meaning." *Michigan United Conservation Clubs v Secretary of State (After Remand)*, 464 Mich 359, 393 (2001) (Markman, J., concurring).

(6) The "Rule of Necessity" is properly invoked in this case because, under ordinary circumstances, each of our colleagues would clearly be precluded by MCR 2.003(B)(5) from participation in this case. To our knowledge, none of our colleagues, or even RMGN, has disputed this point. Each of our colleagues is directly interested in this case because, as in *Evans* and *Will*, each has an obvious and substantial economic interest in the subject matter of the controversy. As stated, the five justices who will remain on this Court if the proposed initiative is adopted will incur a 15 percent decrease in annual salary ($24,691) for the remainder of their judicial service. Given the remaining number of years these justices may continue to serve, the overall diminution in salary will range from an estimated $99,000 to $346,000. At a compounded interest rate of four percent,

---

[5] The "Rule of Necessity" is distinct from the "Duty to Sit" doctrine, under which "there is an obligation to remain on any case absent good grounds for recusal," especially in a court of last resort, such as the supreme court of a jurisdiction, where there are no substitute judges to take the place of those who are recused. *Adair, supra* at 1040-1041 (statement by Taylor, C.J., and Markman, J.), citing *Laird v Tatum*, 409 US 824, 837 (1972).

this amount would range from $109,000 to $470,000 during their potential remaining years of service on this Court.[6] In addition, for those justices who participate in the defined-benefit retirement plan, their benefits will be based upon a percentage of their *final* annual salary, i.e., upon the reduced salary implemented by the proposed initiative. For those justices who participate in the defined-contribution retirement plan, their benefits will reflect a diminished employer contribution based upon the reduced judicial salary. Applying the 2004 Social Security actuarial tables, the overall reduction in retirement benefits among our five colleagues would range from $7,000 to $149,000; taking into consideration a compounded interest of four percent for the periods of life expectancy, these amounts would range from $8,000 to $185,000. Thus, the total salary and retirement benefit losses incurred by our colleagues would range from $106,000 to $494,000; with interest considered, these amounts would range from $117,000 to $655,000.[7] To say the least, this constitutes an "economic interest" in the proposed initiative under MCR 2.003(B)(5).[8]

(7) That the "economic interest" of each of the seven justices in the proposed initiative might vary in its particulars is not relevant under the "Rule of Necessity." If a judge has "*an* economic interest," or "more than a de minimis interest," that would be adversely affected, disqualification is triggered under MCR 2.003(B)(5). There is no caselaw that distinguishes between greater or lesser economic interests, and no hierarchy of disqualifying interests. Rather, what is determinative is simply whether a judge under ordinary circumstances would be subject to recusal under MCR 2.003(B)(5); there are either grounds for recusal or there are not. Once again, we are unaware of any justice of this Court who has asserted that he or she would not be subject to recusal in this appeal by virtue of how the proposed initiative would affect his or her financial circumstances if it is approved.[9]

---

[6] The 30-year bond rate as of August 26, 2008, is 4.41% and the 10-year rate is 3.80%.

[7] None of these calculations, of course, take into consideration that some justices may, although not compelled to do so, nonetheless retire from this Court in order to avoid a loss in retirement benefits.

[8] It goes without saying that although neither of us will be receiving a judicial salary if the proposed initiative is ratified, we will also no longer be performing judicial duties in return, and will presumably be receiving compensation in some other position.

[9] We believe that RMGN misapprehends the United States Supreme Court's holding in *Aetna Life Ins Co v Lavoie*, 475 US 813 (1986). In *Aetna*, the Supreme Court held that, although one justice of the Alabama Supreme Court was disqualified, the remaining eight justices were not. *Id.* at 826-827. Thus, *Aetna* has no application here, where plainly all seven justices of this Court *would be* disqualified. It is noteworthy that the Supreme Court additionally engaged in the following hypothetical: "[A]ccepting appellant's expansive contentions might require the disqualification of every judge in the State. If

(8) The Michigan Supreme Court is this state's highest court and alone is capable of conclusively deciding whether the proposed initiative complies with our constitution. There is clearly no alternative forum to resolve the state constitutional issues being raised in the instant case. There are no procedures for replacing justices of this court who must recuse themselves from a case, and there is no federal jurisdiction in interpreting the constitution of this state.

(9) A due process violation occurs where a person's liberty or property is subjected to "'the judgment of a court, the judge of which has a direct, personal,

---

so, it is possible that under a 'rule of necessity' none of the judges or justices would be disqualified." *Id.* at 826, citing *Will, supra* at 214. Thus, the Supreme Court suggested that, if the "Rule of Necessity" applied, none of the justices would be disqualified under this rule, including the justice previously determined to be disqualified and who would have had a "greater" interest. Nothing in *Aetna* supports RMGN's proposition that a court applying the "Rule of Necessity" must take into account variations in judges' economic interests. Rather, it stands for the entirely uncontroversial proposition that, when one judge is disqualified but a sufficient number who are not disqualified can participate, the case should proceed without the participation of the disqualified judge.

In addition, *DuPlantier v United States,* 606 F2d 654 (CA 5, 1979), upon which RMGN also relies, actually supports the proposition that it is improper to distinguish among disqualified judges. In that case, the plaintiffs challenged a requirement that all federal judges file personal financial statements, which failure could result in a penalty up to $5,000. The court applied the "Rule of Necessity" because all federal judges had an interest in the outcome and refused to distinguish between judges who had filed their personal financial statements and those who had not. *Id.* at 662-663.

Finally, *Wheeler v Bd of Trustees of Fargo Consolidated School Dist,* 200 Ga 323 (1946), upon which RMGN also relies, supports the proposition that it is improper to distinguish among disqualified judges. In *Wheeler,* all the justices had a disqualifying interest because the new constitution that was being challenged raised each of their salaries. Relying on the "Rule of Necessity," six of the justices did not disqualify themselves, including one of the justices who asserted a "greater" disqualifying interest as he had been the state's attorney general and had offered "legal opinions concerning the instrument now under attack." *Id.* at 329. Indeed, the court held that the "Rule of Necessity" applied to this justice "with the same force and effect" as it applied to the other justices who were not disqualifying themselves. *Id.* With regard to a seventh justice who *did* disqualify himself, he did so only because the new constitution that was being challenged *created* his very position on the court. Therefore, he only had the authority to sit as a justice if the challenge to the new constitution failed. As the court explained, "Should he participate in this case, his very act in doing so would presuppose the validity of the instrument under attack." *Id.* at 328. In contrast, all of the justices of this Court clearly hold a valid position on this Court.

substantial, pecuniary interest in reaching a conclusion against him.'" *Aetna Life Ins Co v Lavoie*, 475 US 813, 822 (1986), quoting *Tumey v Ohio*, 273 US 510, 523 (1927). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 US 133, 136 (1955). However, "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Fed Trade Comm v Cement Institute*, 333 US 683, 702 (1948). "The Due Process Clause demarks only the outer boundaries of judicial disqualifications." *Aetna, supra* at 828.

The due process requirement against a judge having a "direct, personal, substantial, pecuniary interest" in a case is encompassed in the *more* stringent MCR 2.003(B)(5). Therefore, if a judge is not disqualified under MCR 2.003(B)(5), the constitutional due process requirement has presumably been met. In this case, *each* of the justices is presumptively disqualified under MCR 2.003(B)(5), and therefore, RMGN's due process rights arguably cannot be protected. However, to altogether deprive a party, as in this case, of *any* tribunal to hear a case or controversy is an even *greater* denial of due process.[10] As the United States Court of Claims has stated:

> We regret that it falls our lot to decide these cases, and we would much prefer that a resolution of the controversy not be our responsibility. Nevertheless, we realize that the plaintiffs are entitled to have their cases heard and decided by a court of the United States, and under the law there is no other court to which they could go. Should we refuse to hear and decide their cases, the doors of the courts would be closed to them. This could amount to a denial of due process under the 14th amendment to the Constitution. [*Atkins v United States*, 214 Ct Cl 186, 207 (1977).]

Accordingly, the requirements of due process must normally yield to the "Rule of Necessity" — a doctrine itself predicated on due process requirements — and the members of this Court must decide this case. That is, because all of the justices on this Court have an economic interest in the outcome of this case, all are disqualified; however, because this would deprive the parties of a forum in which to litigate, none of the justices can be disqualified.

---

[10] As RMGN itself recognizes, "[t]he rule of necessity is a[n] . . . exception to the Due Process requirement of an impartial decision maker" as it is only applicable where it is necessary to "satisfy a litigant's Due Process right to have his case heard." Brief of RMGN at 9. Indeed, the "Rule of Necessity" necessarily must constitute an exception to ordinary guarantees of due process because, by definition, it expressly allows judges to hear a case who would ordinarily be viewed as "interested."

(10) For these reasons, we are not only exempted from recusal in this case, but we are *obligated* to participate. *Will, supra* at 213. Therefore, we deny the motion to disqualify.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

August 28, 2008

t0828

Clerk